UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J.C.,[1]

        Plaintiff,

    v.

KILOLO KIJAKAZI,

        Defendant.

Case No.  20-cv-06746-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 26, 29

## I.  INTRODUCTION

Plaintiff J.C. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF Nos. 26.  Defendant cross-moves to affirm.  ECF No. 29.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

## II.  PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI")] benefits on August 7, 2017, which was initially denied on

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 10.

United States District Court
Northern District of California

December 15, 2017 and again on reconsideration on August 16, 2018.  AR 86-87, 126-27, 236-45.

An Administrative Law Judge ("ALJ") held a hearing on July 16, 2019 and issued an unfavorable

decision on October 8, 2019.  AR 12-51.  The Appeals Council denied Plaintiff's request for

review on July 31, 2020.  AR 1-3.  Plaintiff seeks review in this Court pursuant to 42 U.S.C. §

405(g).

### III.   ISSUES FOR REVIEW

Plaintiff argues the ALJ erred in (1) evaluating the medical evidence, (2) determining that

substance use was material to the determination of disability, (3) determining that his impairments

do not meet or equal a listed impairment, and (4) evaluating his residual functional capacity

("RFC").

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

to deny disability benefits, but "a federal court's review of Social Security determinations is quite

limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability

determination should be upheld unless it contains legal error or is not supported by substantial

evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)

(simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence.

*Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

simply by isolating a specific quantum of supporting evidence."  *Id.* (citation omitted).  "The ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, and for

resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support

either affirming or reversing a decision," the Court may not substitute its own judgment for that of

the ALJ."  *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

United States District Court
Northern District of California

1    harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012).  "[A]n error is harmless

2    so long as there remains substantial evidence supporting the ALJ's decision and the error does not

3    negate the validity of the ALJ's ultimate conclusion."  *Id.* at 1115 (simplified).  But "[a] reviewing

4    court may not make independent findings based on the evidence before the ALJ to conclude that

5    the ALJ's error was harmless."  *Brown-Hunter*, 806 F.3d at 492.  The Court is "constrained to

6    review the reasons the ALJ asserts."  *Id.* (simplified).

## V.   DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

9          A claimant is considered "disabled" under the Social Security Act if two requirements are

10   met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the

11   claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

12   any medically determinable physical or mental impairment which can be expected to result in

13   death or which has lasted or can be expected to last for a continuous period of not less than 12

14   months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe

15   enough that the claimant is unable to perform previous work and cannot, based on age, education,

16   and work experience "engage in any other kind of substantial gainful work which exists in the

17   national economy."  *Id.* § 423(d)(2)(A).

18         The regulations promulgated by the Commissioner of Social Security provide for a five-

19   step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §

20   404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950

21   F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

22         At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

23   gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

24   involves significant mental or physical activities."  *Ford*, 950 F.3d at 1148 (internal quotations and

25   citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful

26   activity since June 1, 2016.  AR 18.

27         At step two, the ALJ decides whether the claimant's impairment or combination of

28   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

United States District Court
Northern District of California

3

claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: polyneuropathy, alcohol use disorder, depressive or bipolar disorder, anxiety disorder, neurocognitive disorder, and diabetes. AR 18.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff's mental impairments meet section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d) and 416.902(d)). AR 18. However, the ALJ found that if Plaintiff stopped the substance abuse, he would not have an impairment that met the listings. AR 19.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's RFC, defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ found that if Plaintiff stopped the substance abuse, he would have the RFC to

4

1
2
3
4
5

> perform a medium work as defined in 20 CFR 404.1567(c) and
> 416.967(c) and SSR 83-10 specifically as follows: the claimant can lift
> and/or carry 50 pounds occasionally and 25 pounds frequently;
> can stand and/or walk for 6 hours out of an 8-hour workday; can sit
> for 6 hours out of an 8-hour workday; can frequently climb ramps or
> stairs; cannot climb ladders, ropes and scaffolds; can frequently
> balance, stoop, kneel, crouch, or crawl; must avoid concentrated
> exposure to unprotected heights; and can perform simple routine
> tasks.

6   AR 20-21.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.

7   AR 24.

8       At step five, the burden shifts to the agency to prove that "'the claimant can perform a

9   significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting

10  *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

11  on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

12  P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).

13  "[A] vocational expert or specialist may offer expert opinion testimony in response to a

14  hypothetical question about whether a person with the physical and mental limitations imposed by

15  the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

16  either as the claimant actually performed it or as generally performed in the national economy."

17  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of

18  Occupational Titles ("DOT").[4]  *Id.*  Here, relying on the opinion of a vocational expert, who

19  testified that an individual with such an RFC could perform other jobs existing in the economy,

20

21  _____

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1   including vehicle cleaner, hospital cleaner, and hand packager, the ALJ concluded that Plaintiff

2   could perform such work if he stopped the substance abuse, and he was therefore not disabled.

3   AR 25-26.

4   **B.    Medical Evidence**

5       Plaintiff argues the ALJ erred by failing to assign persuasive value to Dr. Ted AAmes's

6   opinion and by assigning persuasive value to a state agency examiner and state agency

7   consultants.  Pl.'s Mot. at 7.

8       **1.    Legal Standard**

9       For benefits applications filed after March 27, 2017, the Social Security Administration's

10  regulations and several Social Security Rulings regarding the evaluation of medical evidence have

11  been amended.  Prior to the current regulations, Ninth Circuit law held that an ALJ must provide

12  clear and convincing reasons to reject a treating physician's uncontradicted opinion and must

13  provide specific and legitimate reasons to reject a treating physician's contradicted opinion.  *See*

14  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).  However, under the current regulations,

15  "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this

16  includes giving controlling weight to any medical opinion.'"  *V.W. v. Comm'r of Soc. Sec.*, 2020

17  WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20

18  C.F.R. § 404.1520c(a); *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (noting

19  that the 2017 regulations eliminate the deference given to treating physicians for claims filed after

20  March 27, 2017); SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source

21  Medical Opinions").  Some district courts have continued to apply the "clear and convincing" and

22  "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's]

23  reasoning."  *See, e.g., Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

24  Nov. 10, 2020).  Others, including courts in this district, have not.  *See, e.g., Madison L. v.*

25  *Kijakazi*, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021); *V.W.*, 2020 WL 1505716, at *13;

26  *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021); *Agans v.*

27  *Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021)).

28      "It remains to be seen whether the new regulations will meaningfully change how the

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will

2    continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons'

3    in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v.*

4    *Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (citing *Patricia F. v. Saul*, 2020 WL

5    1812233, at *3 (W.D. Wash. Apr. 9, 2020)).  However, the Ninth Circuit has recognized that the

6    Social Security Administration may, by regulation, override the court's own prior interpretations

7    of the Act.  In *Lambert v. Saul*, the Court of Appeals addressed the conflict between its precedent

8    establishing a presumption of continuing disability after a prior disability determination and the

9    SSA's interpretation of the 1983 Reform Act, which found that no such presumption was available

10   under the statute.  980 F.3d 1266, 1268 (9th Cir. 2020).  In deferring to the agency's interpretation

11   despite its own contrary precedent, the *Lambert* court noted that there are limited circumstances in

12   which a court's own precedent is not controlling, and the court is in fact required to depart from it.

13   *Id.*  "Those circumstances include the intervening higher authority of an administrative agency's

14   authoritative and reasonable interpretation of a statute."  *Id.*  Finding first that the SSA's

15   interpretation was entitled to deference, the Court of Appeals further concluded that "the SSA's

16   authoritative interpretation of the Social Security Act displaces our prior precedents on the issue of

17   a presumption of continuing disability."  *Id.* at 1275.  Given the Ninth Circuit's holding in

18   *Lambert*, the Court finds "it must defer to the new regulations, even when they conflict with

19   judicial precedent."  *Timothy Mitchell B.*, 2021 WL 3568209, at *5; *Agans*, 2021 WL 1388610, at

20   *7).

21          Under the current regulations, the Commissioner must evaluate the persuasiveness of all

22   medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant;

23   (4) specialization; and (5) other factors, such as "evidence showing a medical source has

24   familiarity with the other evidence in the claim or an understanding of our disability program's

25   policies and evidentiary requirements."  20 C.F.R. 20 C.F.R. § 404.1520c(a), (c)(1)-(5), §

26   416.920c(a), (c)(1)-(5).  "The two 'most important factors for determining the persuasiveness of

27   medical opinions are consistency and supportability,' which are the 'same factors' that 'form the

28   foundation of the current treating source rule.'"  *V.W.*, 2020 WL 1505716, at *13 (quoting

1    Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).  When evaluating medical opinions, the

2    Commissioner "may, but [is] not required to," explain how the Social Security Administration

3    considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as

4    appropriate.  20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2).

5         "Although the regulations eliminate the 'physician hierarchy,' deference to specific

6    medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how

7    [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical

8    opinions."  *V.W.*, 2020 WL 1505716, at \*14 (citation omitted; brackets in original).  "Further, the

9    ALJ is required to specifically address the two most important factors, supportability and

10   consistency."  *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

        **2.     Dr. AAmes**

12        Dr. AAmes is a psychologist from Lifelong Medical Care Clinic and has treated Plaintiff

13   since October of 2017.  AR 1976-80.  He diagnosed Plaintiff with: major depressive disorder,

14   recurrent, severe, without psychotic features; social anxiety disorder (social phobia); and alcohol

15   use disorder, severe, in early remission with a sobriety date of March 6, 2018.  AR 1976.  He

16   opined Plaintiff has marked limitations in his ability to: understand, remember, and apply

17   information; concentrate, persist, or maintain pace; interact with others; and adapt or manage

18   oneself.  AR 1978-79.  He further opined that Plaintiff would be off-task more than 30 percent of

19   an eight-hour day and would be absent from work four days or more per month due to his

20   impairments.  AR 1979-80.

21        The ALJ found this opinion unpersuasive because Dr. AAmes's marked limitations were

22   inconsistent with (1) Plaintiff's generally benign clinical presentation and (2) the conservative

23   course of treatment Plaintiff received since his hospitalization and with continuing sobriety.  AR

24   23.

        **a.     Benign Clinical Presentation**

26        Plaintiff argues the ALJ relied on instances where his mental conditions were generally

27   normal while ignoring substantial evidence of severe impairments.  Pl.'s Mot. at 9.

28        An ALJ cannot simply "pick out a few isolated instances of improvement over a period of

United States District Court
Northern District of California

1    months or years" but must interpret "reports of 'improvement' . . . with an understanding of the

2    patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017; *Scott v.*

3    *Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("[A]lthough Scott had improved with treatment, she

4    nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ

5    was not permitted to 'cherry pick' from those mixed results to support a denial of benefits."). The

6    examples an ALJ chooses "must in fact constitute examples of a broader development." *Garrison*,

7    759 F.3d at 1018. Therefore, medical records, which show fluctuation of symptoms, should be

8    fairly considered by looking at the evidence as a whole, rather than isolating specific instances of

9    milder symptomology.

10          Here, the ALJ referenced instances where Plaintiff indicated he felt stable over the year of

11   sobriety and noted his anxiety was well controlled. AR 23. The ALJ also referenced one

12   examination where Plaintiff's mental status exam was generally within normal limits. AR 23,

13   2000. However, other records indicate a more impaired level of functioning. Plaintiff has

14   presented with euthymia with mood congruent, anxiety, reported feeling depressed, increased

15   social anxiety, low mood, fear, excessive worrying, experienced panic attacks, feelings of

16   worthlessness and hopelessness, and anhedonia. AR 1590, 1915, 2003, 2009, 2013, 2017, 2021,

17   2025, 2044. Dr. AAmes also noted Plaintiff's ongoing difficulties with everyday decision making

18   associated with daily routine and social relationships that results in excessive mental actions and

19   rumination. AR 2040. Other medical records indicate Plaintiff's mental health symptoms have

20   caused several impairments in his life functioning, including working and in social relationships.

21   AR 1590. In relying on specific instances of improvement to discredit Dr. AAmes's opinion, it is

22   not clear if the ALJ considered this evidence and the record as a whole.

23          Further, the Court notes that the primary purpose of medical records is not to provide

24   evidence for disability claims: "The primary function of medical records is to promote

25   communication and recordkeeping for health care personnel-not to provide evidence for disability

26   determinations. We therefore do not require that a medical condition be mentioned in every report

27   to conclude that a physician's opinion is supported by the record." *Orn v. Astrue*, 495 F.3d 625,

28   634 (9th Cir. 2007). Therefore, even if Plaintiff presented with what the ALJ categorizes as a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "benign" clinical presentation on specific occasions, it is not clear he should have relied on that

2    mental status examination alone in discounting Dr. AAmes's opinion.

3              **b.        Conservative Course of Treatment and Sobriety**

4              The ALJ also found Dr. AAmes's opinion was inconsistent with Plaintiff's conservative

5    course of treatment he received since his hospitalization and with continuing sobriety.  AR 23.

6    Plaintiff argues this statement is inaccurate because the record demonstrates he had more than

7    conservative treatment following his hospitalization from July 10, 2017 through August 8, 2017.

8    Pl.'s Mot. at 11.  The Court agrees.

9              Plaintiff had an inpatient stay from March 8, 2018 through April 6, 2018 for treatment for

10   both substance use and his mental health conditions.  AR 1611-1747.  The record also shows

11   Plaintiff receives regular, continuing psychotherapy treatment with Dr. AAmes, starting from

12   October 2017, and he sees Dr. AAmes weekly or more often on a regular basis.  AR 1976.  Dr.

13   AAmes also provided a list of Plaintiff's current medication, which included Trazodone and

14   Remeron.  AR 1982.  The ALJ failed to explain how Plaintiff's treatment after his 2017

15   hospitalization was categorized as "conservative" despite an inpatient stay followed by regular

16   therapy sessions and medication.

17             Further, a review of the record shows that Dr. AAmes's opinion was consistent with, and

18   supported by, the medical evidence.  In regards to consistency, other records show Plaintiff has

19   severe limitations in his work-related abilities.  Plaintiff has received weekly-to-biweekly

20   psychotherapy sessions with Dr. AAmes at Lifelong Medical Care Clinic since 2017.  AR 1976.

21   Other records from Lifelong Medical Care Clinic demonstrate that over the years Plaintiff has

22   been treated there, he suffers from anxiety, anxiety associated with various social interactions,

23   anxiety associated with change and the future, difficulties coping, difficulties coping in

24   interpersonal relationships, and fear of peer rejection.  AR 1985, 2009, 2013, 2017, 2021.  Records

25   from Lifelong also indicate Plaintiff's "psychiatric symptoms have a direct and detrimental

26   relationship on [his] ability to obtain a job or hold a job; independently secure and maintain

27   housing; and have functioning relationships," and that Plaintiff's mental illnesses and substantial

28   psychosocial stressors significantly impairs his ability to effectively manage his daily functioning.

United States District Court
Northern District of California

1   AR 1908, 1986, 2004, 2010.

2          Other records are also consistent with Dr. AAmes's findings.  An assessment from Horizon

3   Services, Inc., Chrysalis and Cronin House reflects Plaintiff presented as anxious, has severe

4   impairments in his activities of daily living, self-care, and excessive worrying, and it was noted

5   that his mental health symptoms have resulted in several impairments in life functioning,

6   including his career, housing, and social relationships.  AR 1590-95.  Plaintiff's inpatient hospital

7   stay at Jay Mahler from March 8, 2018 through April 6, 2018 also reflects difficulties in social

8   settings, as he struggled to follow house agreements and had several conflicts with staff.  AR

9   1633.  It was noted during that inpatient stay that Plaintiff's symptoms of anxiety and depression

10  cause him to isolate, he can become overwhelmed with anxiety, he feels hopelessness and

11  depressed, and he needs assistance in learning how to make decisions regarding stressors in his

12  life.  AR 1672-73, 1676.  Additionally, Plaintiff testified that he still experiences panic attacks,

13  depression and anxiety.  AR 21.  This testimony appears to be consistent with Dr. AAmes's

14  findings and the medical record.

15         Dr. AAmes's opinion is also supported by objective medical findings.  In determining

16  supportability, the more relevant the objective medical evidence and supporting explanations

17  presented by a medical source are to support his medical opinion or prior administrative medical

18  findings, the more persuasive the medical opinions or prior administrative medical findings will

19  be.  20 C.F.R. §§ 404.1520c (c)(1), 416.920c (c)(1).  Dr. AAmes noted that his opinion was based

20  on progress and office notes, Plaintiff's history and medical file, and psychological evaluations

21  and reports or opinions.  AR 1976.  Dr.  AAmes also relied on his treating relationship with

22  Plaintiff, as he has treated him since October of 2017 and sees Plaintiff on a weekly-to-biweekly

23  basis for psychotherapy sessions.  *Id.*  The record contains extensive medical records, which

24  document Dr. AAmes's behavioral health notes including his impressions of Plaintiff, treatment

25  plans, current mental status, and diagnoses.

26         Additionally, the ALJ determined that a statement from Dr. AAmes in his treating records,

27  that Plaintiff's symptoms have "a direct and detrimental relationship" on his ability to obtain a job

28  or hold a job, was unpersuasive because it was not supported by clinical evidence, such as mental

11

status exams, and the generally conservative course of treatment he has received since his

hospitalization.  AR 23.  However, a review of the record shows that it includes clinical evidence

from Dr. AAmes documenting Plaintiff's impairments and his current mental presentation.  *See,*

*e.g.*, AR 1992-93.  While not all of the medical records from Lifelong Medical Care Clinic list out

all the elements from a mental status examination, Dr. AAmes still documented Plaintiff's current

mental status during all of his psychotherapy sessions.

     Defendant argues the ALJ's decision should be upheld because Dr. AAmes's opinion was

inconsistent with Skylar Loeb, Nurse Practitioner, who had two psychotherapy sessions she had

with Plaintiff.  Def's. Mot. at 7.  However, the ALJ did not discuss Nurse Loeb's psychotherapy

sessions in his decision to reject Dr. AAmes's opinion, and post hoc explanations of an ALJ's

rejection of a medical opinion are insufficient.  *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir.

2001) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in

making the decision.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Stout v. Comm'r,*

*Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201

(9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion . . .").  As

such, the Court may not uphold the ALJ's decision on this ground.  Regardless, these two

psychotherapy sessions do not render Dr. AAmes's opinion inconsistent.  Nurse Loeb described

Plaintiff as having a history of anxiety, social phobia, and diagnosed him with substance or

medication-induced depressive disorder, generalized anxiety disorder, and social phobia.  AR

1976, 2095-96.  Dr. AAmes also noted these symptoms in his opinion.  Defendant asserts that

Nurse Loeb found Plaintiff's alcohol dependence *significantly* worsened his anxiety, panic, and

social phobia issues.  Def.'s Mot. at 7.  However, Nurse Loeb never indicated that Plaintiff's

alcohol dependence significantly worsened his symptoms; rather, she said they were *influenced* by

it.  AR 2095.  Defendant also argues that Nurse Loeb indicated in May 2019 that Plaintiff "felt

fairly stable and normal over the past year with over a year of sobriety."  Def.'s Mot. at 7.  While

Plaintiff self-reported he felt "fairly stable over the past year," Nurse Loeb did not conclude

Plaintiff was stable.  AR 2000.

     In sum, the Court finds the ALJ failed to properly assess Dr. AAmes's opinion, and

United States District Court
Northern District of California

1   remand is therefore appropriate.

2       **3.      Dr. Tobias**

3           Faith Tobias, Ph.D., completed a consultative psychological evaluation on November 8,

4   2017, and assessed no more than moderate limitations in Plaintiff's work-related functioning.  AR

5   1604-10.  The ALJ found Dr. Tobias's opinion was persuasive because it was consistent with the

6   clinical findings and test results documented in her own report.  AR 23.  However, to determine

7   consistency, the ALJ must compare the provider's opinion with the other opinions and records in

8   the file, and the more consistent a medical opinion is with the evidence from other medical sources

9   and nonmedical sources in the claim, the more persuasive the medical opinion will be.  20 C.F.R.

10  §§ 404.1520c (c)(2), 416.920c (c)(2).  Rather than discussing how it was consistent with the other

11  medical opinions and records in the file, the ALJ only compared Dr. Tobias's opinion with itself.

12  Further, the ALJ did not address how Dr. Tobias's opinion was supported.  Supportability is one

13  factor that the ALJ must discuss.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).  Instead, the

14  ALJ noted that Dr. Tobias's opinion was "reasonable in light of the [Plaintiff's] largely improved

15  functioning with sobriety and treatment compliance."  AR 23.  Even if the ALJ attempted to

16  discuss supportability when he stated Dr. Tobias's opinion was consistent with her own findings,

17  the ALJ still failed to properly address how this opinion was consistent with the record.  For

18  instance, Dr. AAmes determined that even after sobriety, Plaintiff has marked limitations in his

19  ability to: understand, remember and apply information; interact with others; concentrate, persist,

20  or maintain pace; and adapt and manage oneself.  AR 1978-79.  Even after sobriety, Plaintiff

21  continued to evince anxiety and depression.  *See, e.g.*, AR 1985-86, 1992-93, 2010.  Based on his

22  decision, it is not clear whether the ALJ considered this and other medical evidence of record as a

23  whole.  Accordingly, remand is appropriate.

24      **4.      State Agency Consultants' Opinions**

25          State agency mental health consultants also completed assessments at the initial and

26  reconsideration levels, finding no more than moderate limitations in Plaintiff's work-related

27  abilities. AR 52-84, 88-125.  The ALJ found the consultants' opinions were generally consistent

28  with Plaintiff's reported activities of daily living, mental status findings, and clinical presentation

13

United States District Court
Northern District of California

1    during his period of sobriety, as well as his conservative course of treatment for mental health

2    issues since his hospitalization in 2017.  AR 23.  However, as discussed above, it is not clear the

3    ALJ considered evidence that shows Plaintiff's mental impairments result in higher severity in his

4    work-related abilities.  The record indicates Plaintiff has presented with anxiety, depression and

5    social anxiety repeatedly over the course of his treatment from 2017 through 2019 at Lifelong

6    Medical Care Clinic.  *See, e.g.*, AR 1829-30, 1833-34.  Further, Plaintiff's inpatient hospital stay

7    at Jay Mahler from March 8, 2018 through April 6, 2018, showed that Plaintiff displayed

8    difficulties in social settings including having conflict with staff and he displayed anxiety and

9    depression.  AR 1633, 1672-73, 1676.  Further, while the ALJ found the state agency consultants'

10   opinions are generally consistent with Plaintiff's conservative treatment since his hospitalization

11   in 2017, Plaintiff's treatment since that time has included an inpatient stay at Jay Mahler and

12   regular psychotherapy sessions at Lifelong Medical Care Clinic on a weekly and biweekly basis.

13   AR 1611-98, 1805-2112.  Accordingly, remand is appropriate.

**C.    Substance Abuse**

15        The ALJ found that substance use was a contributing factor material to the determination

16   of disability, finding Plaintiff would not be disabled if he stopped substance use.  AR 26.  Plaintiff

17   argues the evidence does not show that, in the absence of substance use, his co-occurring mental

18   disorder would improve to the point of non-disability.  Pl.'s Mot. at 18.  He notes that his most

19   recent date of sobriety is March 6, 2018, and the evidence shows that after this date, he continued

20   to experience mental health symptoms.  *Id.* (citing AR 1976).  He maintains these symptoms are

21   severe and render him unable to work.  *Id.*

**1.    Legal Standard**

23        "[A] claimant cannot receive disability benefits 'if alcoholism or drug addiction would . . .

24   be a contributing factor material to the Commissioner's determination that the individual is

25   disabled.'"  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. §

26   423(d)(2)(C)).  "[T]he ALJ must conduct a drug abuse and alcoholism analysis ('DAA Analysis')

27   by determining which of the claimant's disabling limitations would remain if the claimant stopped

28   using drugs or alcohol."  *Id.* at 747 (citing 20 C.F.R. § 404.1535(b)).  "If the remaining limitations

United States District Court
Northern District of California

14

1    would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing

2    factor material to his disability.  If the remaining limitations would not be disabling, then the

3    claimant's substance abuse is material and benefits must be denied." *Id.* (citing 20 C.F.R. §

4    404.1535(b)).  "[T]he claimant bears the burden of proving that drug or alcohol addiction is not a

5    contributing factor material to his disability." *Id.* at 748.

6        **2.    Analysis**

7        The Court finds the ALJ's determination is not supported by substantial evidence.  SSR 13-

8    2p requires an ALJ to consider "objective medical evidence—that is, signs, symptoms, and

9    laboratory findings—from an acceptable medical source that supports a finding that a claimant has

10   DAA." SSR 13-2p(8)(b)(i), 2013 WL 621536, at *10.  As discussed above, it is not clear that the

11   ALJ considered all such evidence in this case.

12       Since March 6, 2018, Plaintiff was hospitalized at Jay Mahler for approximately one

13   month and was seen at Lifelong Medical Care Clinic for regular psychotherapy sessions with Dr.

14   AAmes. AR 1611-1747; 1805-2112.  Upon admission at Jay Mahler, Plaintiff's principle

15   diagnosis was major depressive disorder, single episode, unspecified and upon discharge, his

16   principle diagnosis was major depressive disorder, single episode, severe with psychotic features.

17   AR 1612.  He appeared disheveled, had poor eye contact, poor insight, and verbalized feeling

18   depressed.  AR 1652-53.  During his hospitalization, Plaintiff continued to display difficulties in

19   social settings.  He struggled following rules, had several conflicts with staff, and staff noted he

20   blatantly disregarded doctor's orders. AR 1633.  Staff indicated Plaintiff has anxiety and

21   depression, which causes him to isolate himself, making his symptoms worse. AR 1672-73.  Staff

22   also noted Plaintiff can become overwhelmed with anxiety.  AR 1673.  There was no indication

23   Plaintiff was consuming alcohol during this inpatient stay, yet he continued to experience

24   symptoms of his mental disorder.

25       Additionally, since his sobriety date, Plaintiff has been seen regularly for psychotherapy

26   sessions.  He has been diagnosed with major depressive disorder, recurrent, severe and social

27   anxiety (social phobia). *See, e.g.*, AR 1835, 1839, 1849, 1853, 1861, 1875, 1882, 1891, 1905,

28   1912, 2109, 2112.  These records also show Plaintiff has often presented with, and displayed

United States District Court
Northern District of California

15

1    issues with the following: anxiety, depression; being fearful of rejection which has resulted in

2    shame, resentment, apprehensive expectation and a strong need for explicit reassurance from

3    others; difficulties coping with anxiety; social anxiety; difficulties with how to respond to specific,

4    routine social interactions for fear of embarrassment; fear or rejection and abandonment;

5    sensitivity to criticism and disproval of others is extreme; and difficulties coping with change.

6    *See, e.g.*, AR 1830-31, 1834, 1848, 1852, 1860, 1881, 1890, 1911, 1915, 2108, 2111.  While this

7    record shows Plaintiff continued to experience symptoms from his co-occurring mental disorders,

8    despite his sobriety, the ALJ referenced one instance where Plaintiff reported he felt "stable" over

9    the past year of sobriety.  *Id.*

10    Finally, as discussed above, remand is appropriate for a reweighing of medical-opinion

11    evidence.  Because the ALJ's DAA determination was based on those assessments, remand for

12    further proceedings is also appropriate for consideration of whether Plaintiff's disabling

13    limitations would remain if substance abuse was not a factor.  *See, e.g., A.S. v. Saul*, 2021 WL

14    1087473, at *21 (N.D. Cal. Mar. 22, 2021) (remand for consideration of whether medical evidence

15    of record supports ALJ's DAA materiality analysis); *Brown v. Saul*, 2020 WL 1433175, at *13

16    (N.D. Cal. Mar. 24, 2020) (same).  On remand, the ALJ shall first reweigh the medical evidence

17    and then reassess whether Plaintiff's DAA was a material factor to his disability.

18    **D.    Remaining Arguments**

19    Plaintiff raises two additional arguments: (1) the ALJ erred in determining that his

20    impairments do not meet or equal a listed impairment, and (2) the ALJ erred in evaluating his

21    RFC.  Plaintiff's arguments on these points, however, rely heavily on his argument that the ALJ

22    erred in assessing the medical opinions in this case.  Because the Court agrees that the ALJ erred

23    in assessing the medical opinions, and because the ALJ's listings and RFC determinations were

24    necessarily predicated on assessment of the medical opinions, the Court remands on these issues

25    as well.  On remand, the ALJ must analyze whether Plaintiff meets a listing and evaluate his RFC

26    based on assessment of the medical opinions.

27    **E.    Remedy**

28    The remaining question is whether to remand for further administrative proceedings or for

United States District Court
Northern District of California

16

1    the immediate payment of benefits under the credit-as-true doctrine.  "When the ALJ denies

2    benefits and the court finds error, the court ordinarily must remand to the agency for further

3    proceedings before directing an award of benefits."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th

4    Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

5    However, under the credit-as-true rule, the Court may order an immediate award of benefits if

6    three conditions are met.  First, the Court asks, "whether the 'ALJ failed to provide legally

7    sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.*

8    (quoting *Garrison*, 759 F.3d at 1020).  Second, the Court must "determine whether there are

9    outstanding issues that must be resolved before a disability determination can be made, . . . and

10   whether further administrative proceedings would be useful."  *Id.* (simplified).  Third, the Court

11   then "credit[s] the discredited testimony as true for the purpose of determining whether, on the

12   record taken as a whole, there is no doubt as to disability."  *Id.* (citing *Treichler*, 775 F.3d at

13   1101).

14        It is only "rare circumstances that result in a direct award of benefits" and "only when the

15   record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the

16   record supported the reasons provided by the ALJ for denial of benefits."  *Id.* at 1047.  Further,

17   even when all three criteria are met, whether to make a direct award of benefits or remand for

18   further proceedings is within the district court's discretion.  *Id.* at 1045 (citing *Treichler*, 775 F.3d

19   at 1101).  While all three credit-as-true factors may be met, the record as a whole could still leave

20   doubts as to whether the claimant is actually disabled.  *Trevizo*, 871 F.3d at 683 n.11.  In such

21   instances, remand for further development of the record is warranted.  *Id.*

22        As discussed above, the Court finds the ALJ failed to fully and fairly develop the record

23   when evaluating Plaintiff's disability claim.  However, it is not clear that the ALJ would be

24   required to find her disabled.  Accordingly, remand for further proceedings is appropriate.

25                                    **VI.    CONCLUSION**

26        For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES**

27   Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This case is **REMANDED** for

28   further administrative proceedings consistent with this order.  The Court shall enter a separate

United States District Court
Northern District of California

17

judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: December 2, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California